UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

                                           Case No. 807-72869-reg

SUNIL PARIKH,

                      Debtor.                Chapter 7

-----------------------------------------------------------------x
JOHN DESIDERIO,

                          Plaintiff,

                                     Adv. Proc. No. 808-8062-reg

        v.

SUNIL PARIKH,

                         Defendant.

-----------------------------------------------------------------x

## DECISION

**(Re: MOTION FOR SANCTIONS [DKT # 191]
and MOTION TO BE RELIEVED AS COUNSEL [DKT #197])**

        Before the Court is the motion ("Motion") by the Plaintiff, John Desiderio Sr.

("Desiderio"), seeking sanctions against the Defendant/Debtor, Sunil Parikh (the "Debtor"), the

Debtor's wife, Meena Parikh ("Meena"), the Debtor's counsel, Marc Pergament, Esq.

("Pergament"), and his law firm Weinberg Gross & Pergament LLP ("WGP"), for their alleged

bad faith bankruptcy filing and conduct in this adversary proceeding and Debtor's Chapter 7

bankruptcy case.  [Adversary Proceeding Docket ("AP Dkt") #191].  In seeking sanctions

Desiderio relies upon this Court's inherent power, 11 U.S.C. §§105(a), 707(b)(4)(C),

707(b)(4)(D), 28 U.S.C. §1927, and/or Federal Rule of Bankruptcy Procedure 9011

("Sanctions").  Desiderio also seeks to have costs awarded to him in this adversary proceeding

pursuant to 28 U.S.C. §1920 ("Costs").  He further requests entry of a money judgment against

the Debtor and Meena pursuant to an Order of this Court, dated November 4, 2008 [Bankruptcy Case Docket ("BK Dkt") #72], granting daily monetary sanctions for failure to comply with subpoenas under Federal Rule of Bankruptcy Procedure 2004 ("Judgment on Prior Sanctions").

This Court previously denied the Motion by Order, dated March 13, 2012. [AP Dkt #199]. Desiderio appealed [AP Dkt #200], and upon review by the District Court for the Eastern District of New York, this Court's denial was vacated and this matter remanded for (1) "further findings regarding whether the actions of the Debtor, [Meena], Pergament, and/or WGP were sanctionable," and (2) further findings regarding the entry of a Judgment on Prior Sanctions. [AP Dkt #209, Civil Action No. 12-cv-02148].

Upon reconsideration of the Motion, this Court finds that to the extent the Motion seeks a finding that Pergament's conduct was sanctionable, it should be granted, in part, pursuant to Rule 9011 as to Pergament and WGP.  Rule 9011(b) requires an attorney to conduct an inquiry "reasonable under the circumstances" prior to filing a bankruptcy petition and schedules.  Here, Pergament signed the Debtor's Chapter 7 petition [BK Dkt #1] which contained incomplete or incorrect information.  These inaccuracies and omissions should have been apparent to the Debtor's counsel based on the existence of a readily-available prior Chapter 13 petition [Case No. 8-06-71203-sb Docket ("Ch. 13 Dkt") #1, 14, 15] which should have caused counsel to conduct a further inquiry into the facts.  Had counsel conducted this inquiry it would have revealed facts very different from the facts presented in the Chapter 7 petition, as filed.  As a result the Court finds that the Debtor's counsel's conduct in this case is sanctionable under Rule 9011.

Pergament's attempt to avoid a finding that his conduct was sanctionable by assertion of the attorney-client privilege fails, as does his defense that this was a "bare bones" petition filed

in an emergency filing.  First, were counsel able to use the attorney-client privilege as a defense

to Rule 9011 or other sanctions, the Court's ability to sanction counsel would be entirely

circumvented.  Second, the Chapter 7 petition filed in this case was not a "bare bones" petition.

A bare bones petition would have been a three-page document consisting of the petition only

(Official Form 1).  What Pergament filed was a 40-page document including all, or almost all, of

the schedules and statements required of a Chapter 7 debtor.  The problem is, the information

included in those filings was incomplete and/or inaccurate, and if Pergament had conducted a

reasonable inquiry, he would have known that.  The emergency nature of a bankruptcy filing

does not excuse compliance with Rule 9011(b).  *See In re Moffett*, 10-71920, 2012 WL 693362

(Bankr. C.D. Ill. Mar. 2, 2012); *In re Alessandro*, 10-12511 AJG, 2010 WL 3522255 (Bankr.

S.D.N.Y. Sept. 7, 2010).

This Court's ruling is about the fine line lawyers must navigate between zealous

advocacy on behalf of their clients and conduct that is sanctionable.  The Court is mindful and

strongly believes that zealous advocacy is the bedrock of our legal system.  Any restraint or

limits placed on a lawyer in the performance of his duties must be applied with the utmost care.

However, the Court is also duty bound to ensure the integrity of this Court and hold attorneys

who practice before it accountable for conduct that goes beyond zealous advocacy into the realm

of sanctionable conduct.

Counsel for debtors in bankruptcy have to be particularly mindful of their duty to conduct

an inquiry into the facts presented in a bankruptcy petition and schedules that is reasonable under

the circumstances.  First, the filing of a bankruptcy petition affords immediate and significant

benefits to a debtor.  The Court and parties in interest rely heavily on the information disclosed

in the petition and schedules.  Second, bankruptcy is not a typical adversarial proceeding where

3

abuses by one party are likely to be exposed by another party.  Chief Justice Burger famously

described the adversarial system of justice as a tripod, one leg representing the court and the

other two legs representing the adversaries.  Justice William H. Erickson, *The History of the*

*Tripod of Justice*, 64 Mil. L. Rev. 79, 100 (1974) (citing Chief Justice Warren E. Burger, Second

Plenary Session American Bar Association Annual Meeting, July 16, 1971).  Each leg must be

equally strong to maintain justice.  *Id*.  In enacting the Bankruptcy Code, Congress recognized

that creditors lack incentive to participate as actively against a debtor in bankruptcy as they

would in normal litigation involving a plaintiff and a defendant because "[i]n contrast to general

civil litigation, where cases affect only two or a few parties at most, bankruptcy cases may affect

hundreds of scattered and ill-represented creditors."  H.R.Rep. No. 595, 95th Cong., 1st Sess. 88

(1977), U.S.Code Cong. & Admin.News 1978, 5787, 6050.  In addition, creditors in non-

bankruptcy litigation engage in a race to the bottom against a defendant, where the most

aggressive, fast-acting creditor recovers the most.  However, once a debtor enters bankruptcy,

similarly situated creditors recover the same amount from the debtor, often less than the full

amount owed to them, regardless of their participation. In bankruptcy, the debtor's "leg" is

relatively strong-debtors are afforded an immediate automatic stay and are highly incentivized to

zealously participate in their case-while the creditor's leg is relatively weak. Thus, in bankruptcy,

the line between zealousness and abuse must be firmly observed to maintain the balance of the

bankruptcy process.  Courts use sanctions to draw this line and ensure that it is observed. *See*

*United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-*

*CIO*, 948 F.2d 1338, 1343 (2d Cir. 1991).

Desiderio has asked this Court to redress the sanctionable conduct in this case by the

imposition of monetary sanctions payable to him.  However, the Court finds that publication of

this Decision is an appropriate sanction in this case – sufficient to deter future sanctionable conduct.

The remainder of the relief sought by Desiderio in the Motion is denied for the reasons as set forth herein.  Finally, Pergament's motion to be relieved as counsel to the Debtor and Meena will be granted.

## PROCEDURAL HISTORY AND RELEVANT FACTS[1]

Prior to filing the instant Chapter 7 petition, the Debtor had filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code ("Chapter 13 Petition") on May 30, 2006 ("Chapter 13 Petition Date") with the assistance of bankruptcy counsel.  Among the personal property disclosed in the Chapter 13 Petition was a Citibank checking account (account number ending in X9420) held jointly by the Debtor and Meena, with a balance of $146.67.  [Ch. 13 Dkt # 1]. The Debtor also scheduled first and second mortgage liens on his residence in favor of Wells Fargo and Citibank, respectively, totaling approximately $200,000, plus a third mortgage to Meera Management LLC" ("Meera Mortgage") in the amount of $300,000.  Schedule J listed the monthly payment on the Debtor's first mortgage as $823.73, and on the second mortgage, $550.  In the Chapter 13 case, the Debtor also listed Peter Devani and Meena as co-debtors of the Debtor, $2,500 monthly income from Meena, and interests in two businesses (Health Heaven and Kuliwala Food Corp.).

The Chapter 13 Petition was dismissed by Order, dated November 2, 2006 [Ch. 13 Dkt #16], on motion of the United States Trustee [Ch. 13 Dkt #9] for the Debtor's failure to produce documents.

---

[1] A fuller history of this adversary proceeding and the facts upon which it is based can be found in this Court's Decision after Trial, dated May 24, 2011, denying the Debtor's discharge.

Desiderio was a creditor in the Chapter 13 case as he is in the instant Chapter 7 case. Prior to the Chapter 13 Petition Date, on July 19, 2004, Desiderio commenced an action in the Supreme Court of Nassau County against the Debtor and Peter Devani ("Devani") to enforce personal guarantees related to a commercial transaction among the parties (Index #009557/04) ("Guaranty Action"). The state court entered judgment in favor of Desiderio, but collection efforts were stayed upon the filing of the Chapter 13 Petition. After the Bankruptcy Court granted the Chapter 13 Trustee's motion to dismiss, but before entering an order dismissing the case Desiderio moved for an amended judgment in the Guaranty Action. On November 1, 2006, the state court entered an amended judgment in favor of Desiderio in the amount of $98,328.28 against the Debtor and Devani, and an additional $44,784.28 against Debtor, [AP Dkt #22-53], for a total of $143,112.56.[2]

In the Guaranty Action, the Debtor was found in contempt on March 16, 2006 for failing to comply with subpoenas and was afforded an opportunity to purge his contempt. [AP Dkt #22-51]. The Debtor was further sanctioned on June 14, 2006 for failing to comply with subpoenas, and was again afforded an opportunity to comply. *Id*. The Debtor was fined a total of $100.00 for these two contempt findings. Desiderio moved for a warrant of commitment after the Chapter 13 Petition was dismissed, and on January 24, 2007, the state court held that the Debtor had refused to purge his contempt and entered a Final Order of Contempt and Warrant of Commitment. [AP Dkt #22-52]. The court entered judgment on the Final Order of Contempt and Warrant of Commitment on April 3, 2007, and directed the Nassau County sheriff's office to arrest the Debtor. [AP Dkt #22-51].

---

[2] No one has raised the issue of whether the entry of this judgment prior to the entry of the Order dismissing the Chapter 13 case constituted a violation of the automatic stay. 11 U.S.C.§ 362(c).

On March 16, 2007, Meera Management LLC brought an action against the Debtor, Meena, and Desiderio, a judgment lien creditor, to foreclose on the Meera Mortgage – a third mortgage against the Debtor's residence. (Index #00217/07) ("Foreclosure Action").  Desiderio moved for summary judgment denying the foreclosure on the ground that the mortgage was a fraudulent conveyance. [AP Dkt #22-20].  The state court agreed, and on June 13, 2007 entered a short form decision and order finding that the Meera Mortgage was a fraudulent conveyance to a related entity done with the intention of depleting the available equity in the Debtor and Meena's real property ("June 13 Order").  [AP Dkt #22-20].  The court specifically held that Debtor and Meena "continue to engage in a planned, calculated scheme to defraud and delay Desiderio from the collection of his judgment." [AP Dkt #22-20 at *4].   The June 13 Order directed Desiderio to submit a proposed judgment, by notice of settlement, vacating the Meera Mortgage.  Also in the June 13 Order, the state court awarded Desiderio $7,575.00 in attorney's fees jointly and severally against Meera Management, LLC, the Debtor, and Meena, and directed the County Clerk to enter judgment for said amount.  The state court subsequently, on June 20, 2007, entered a judgment granting Desiderio $7,575.00 in attorney's fees, plus 9% interest from the date of June 13, 2007, which amounted to $7,590.15  ("June 20 Judgment") [AP Dkt #22-23].  On July 31, 2007, the state court entered a judgment directing the Nassau County Clerk to vacate the Meera Mortgage.  [AP Dkt #22-24].

On July 30, 2007 (the "Chapter 7 Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code ("Chapter 7 Petition") with the assistance of WGP.  Pergament signed the petition.  The schedules as originally filed did not disclose the Citibank bank account that was previously disclosed in the Chapter 13 Petition.  Schedule J listed the Debtor's first and second mortgage payments as $1,700 and $880, respectively (a total

$1,200 increase from the Chapter 13 Petition).  Schedule D listed Desiderio as a secured creditor holding judgment lien(s) in the amount of $150,702.72, which appears to be the total amount of the judgment(s) obtained by Desiderio as of the Chapter 7 Petition Date.[3]  However, the Chapter 7 Petition, as originally filed, failed to list Devani as a co-debtor on any judgment, failed to list Meena as a co-debtor with respect to the June 20th Judgment, and failed to list the Debtor's interest in Kuliwala Food Corp.  The Chapter 7 Petition also failed to list, in response to Question 19 of the Statement of Financial Affairs, any accountant that kept the Debtor's books and records within the two years prior to the Chapter 7 Petition Date.  On Schedule I, the Chapter 7 Petition listed the Debtor's current income as $800 per month, and  Meena's income as $2,326.82.  In response to Question 1 of the Statement of Financial Affairs, the Chapter 7 Petition reflected the Debtor's income from 2005 as $52,638.00.

The petition and schedules did not report a $45,000 withdrawal from the Debtor and Meena's VRESA (home equity line of credit) account, a portion of Desiderio's claim for attorney's fees that remained unsecured because it had been awarded but not yet reduced to judgment, or the Debtor's ownership in 2001 of Davenil Consulting. The Debtor listed on Schedule F, *inter alia*,  a debt for $700.00 to American Express, $2,500.00 to Bank of America, a debt to Shah & Pandya, for $4,000, and a debt to Solomon Lowenbraun for $5,562.56.  The Debtor's Statement of Current Monthly Income and Means Test Calculation [BK Dkt #2] listed his marital status as legally separated or living apart.  Despite this, on September 17, 2007, the Debtor filed an Amended Statement of Current Monthly Income and Means Test Calculation

---

[3] In the Decision After Trial [AP Dkt #189] the Court noted that the judgments attached to Desiderio's Proof of Claim added up to only $143,112.56, including interest.  The June 20th Judgment was not attached to the Proof of Claim.  However, the difference between the scheduled amount of $150,702.72 and $143,112.56 is $7,590.16, the exact amount of the June 20th Judgment for attorney's fees. Thus, it appears that the Debtor scheduled all of the judgments memorializing debts owed to Desiderio at the time of the Chapter 7 Petition.

[BK Dkt #12] to include Meena's income and indicated that they were not separated or living apart.

Eighteen months after the initial filing, on January 27, 2009, Pergament filed amended schedules, including Schedule J, to reduce the monthly first mortgage payment from $1,700 to $823.73 (the same amount originally reflected in the Chapter 13 Petition).  [BK Dkt #79].  Pergament also listed Desiderio as an unsecured creditor on Schedule F for legal fees, although he noted that they were contingent, disputed, and unliquidated.  At that time, the Debtor also filed an amended Statement of Financial Affairs to report that the accountants, Shah & Pandya, CPA, P.C. provided services to the Debtor from 1995 to the Chapter 7 Petition Date.  The Debtor also filed an amended Schedule H to list Pever Devani as a co-debtor on the Debtor's obligations to Desiderio.  At no time in the Chapter 7 case did the Debtor disclose the Citibank account as being open within one year of the bankruptcy filing as required by the Statement of Financial Affairs.

Desiderio filed a proof of claim in the Chapter 7 case in the total amount of $281,311.45 which is based upon the pre-petition state court judgment(s), plus additional counsel fees in the amount of $128,635.83.   [Claim 1-1].

Desiderio filed an adversary proceeding in the Chapter 7 case on March 27, 2008 seeking to dismiss the petition as a bad faith filing pursuant  to 11 U.S.C.§707(a), or alternatively, to deny the Debtor's discharge pursuant to §§727(a)(2)(A),727(a)(3), 727(a)(4)(A), 727(a)(4)(B), 727(a)(4)(D), 727(a)(5), and/or 727(a)(6)(A).[4]  [AP Dkt #1].  Desiderio alleged, *inter alia*, that the Debtor had omitted information from his Chapter 7 Petition, that the Debtor filed the petition

---

[4] Desiderio also alleged causes of action pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (B), but withdrew these claims at the conclusion of trial.

solely to frustrate Desiderio's collection efforts, and that the Debtor  fraudulently conveyed assets to various parties to shield them from Desiderio.

Both parties filed various motions in the adversary proceeding, including Desiderio's Motion for Summary Judgment [AP Dkt #22] , which was denied on April 2, 2009 [AP Dkt #41].  Desiderio sought leave from the District Court to appeal the interlocutory order denying his motion for summary judgment.  [AP Dkt #43].  The District Court denied that request on July 31, 2009 [AP Dkt #61].

As a result of  discovery misconduct by both parties, the Bankruptcy Court sanctioned the Debtor by prohibiting him from producing documents at trial that were not produced to Desiderio.  The Court also sanctioned Desiderio by prohibiting him from producing documents at trial, namely records relating to his attorney's fees.  [AP Dkt #42].

The Court held a trial on the merits over several days from November 2009 through June 2010.  On May 24, 2011, the Court issued its Decision After Trial [AP Dkt #189] ("D.A.T"), which held that Desiderio sustained his burden of proof to dismiss the case for cause under §707(a) and to deny discharge under §727(a)(4)(A) and (a)(2)(A).  However, the Court declined dismissal of the case and instead denied the discharge.

On June 28, 2011, Desiderio filed the present Motion for sanctions against Pergament, WGP, Debtor, and Meena pursuant to Rule 9011, §707(b)(4)(C) and (D), 11 U.S.C. §105, 28 U.S.C. §1920, 28 U.S.C. §1927, and the Court's inherent powers.  On March 5, 2012, the Court held a hearing on the Motion and denied it for the reasons given on the record.  Desiderio appealed, and on March 29, 2013, the District Court remanded the matter for further findings. After giving the parties an opportunity to submit further papers on the issues presented, this matter was marked submitted on June 3, 2013.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (H), (I), (J) and (O). The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

## DISCUSSION

### I. Motion for Sanctions

### A. *Sanctions against Pergament and WGP*

Desiderio seeks sanctions against Pergament and WGP, in the total amount of $239,252.69, in the form of attorneys' fees and costs incurred by Desiderio in this bankruptcy case, pursuant to Rule 9011, 11 U.S.C. §707(b)(4)(C) and (D), 28 U.S.C. §1927, 11 U.S.C. §105, 28 U.S.C. §1920, and the Court's inherent power. The Court will address the separate theories in order.

#### i. *Rule 9011 and 11 U.S.C. § 707(b)(4)*

According to Rule 9011(b) the signature by an attorney or unrepresented party on any paper filed with the court constitutes a certification "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--

1. it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

2. the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

3.  the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

4.  the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011(b).

If a court makes a finding that Rule 9011(b) has been violated, Rule 9011(c) permits the court, within its discretion, to impose sanctions upon the offending attorney or party. *See Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004) ("Even if the district court concludes that the assertion of a given claim violates Rule 11, however, the decision whether or not to impose sanctions is a matter for the court's discretion."). "Absent exceptional circumstances" an attorney's law firm will be held jointly and severally liable for Rule 9011(b) violations by its attorneys or employees. Fed. R. Bankr. P. 9011(c)(1)(A).

In determining whether to exercise discretion to impose Rule 9011 sanctions, the Court should be guided by the purposes of Rule 9011 sanctions, which is to "deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Bankr. P. 9011(c)(2); *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 07-CV-3208 KAM SMG, 2010 WL 4878955 at *2 (E.D.N.Y. Nov. 23, 2010) ("[I]n exercising its broad discretion to impose Rule 11 sanctions in an appropriate amount, this court must also contemplate the limited permissible purposes for Rule 11 sanctions. ") (quoting Advisory Committee Note (1993) ("The court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct ....")).

Although the primary purpose of Rule 9011 is deterrence, compensation is considered a secondary purpose. *See* Fed. R. Bankr. P. 9011(c)(1)(A)( "If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion."). *But see* Advisory Committee Note (1993) ("Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty.").

If sanctions pursuant to Rule 9011 are sought by motion of a party, the movant must comply with a safe-harbor provision contained in Rule 9011(c)(1)(A) which requires that the offending party be given notice and an opportunity to cure the offending conduct. Specifically, the safe harbor provision requires that:

> …The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected…

Fed. R. Bankr. P. 9011(c)(1)(A). However, the safe harbor provision does not apply where the offending conduct is the filing of a bankruptcy petition in violation of Rule 9011(b). *Id.*

Assuming the movant has complied with the safe harbor provisions of Rule 9011(c), awarding sanctions pursuant to the "improper purpose" prong of Rule 9011(b) (1) requires a finding of subjective bad faith. This differs from sanctions under Rule 9011(b)(2), where an attorney fails make a reasonable inquiry into whether claims asserted are "warranted in law," which uses an objective bad faith standard that requires frivolousness. Although the Court may infer subjective bad faith from a frivolous filing, or one that is entirely without merit, frivolity is not a necessary finding under the "improper purpose" prong of Rule 9011(b). Sanctions may be—but need not be—imposed when court filings are used for an "improper purpose," or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous.

*Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012); *see also Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985), *cert. denied*, 484 U.S. 918 (1987) (sanctions can be imposed for filings made for an "improper purpose" even where the attorney conducted a reasonable investigation).

Subjective bad faith can occur when a paper is submitted to harass a litigant or unnecessarily delay the proceedings. However, the delay or frustration to creditors must be unnecessary; delay and frustration alone are insufficient for sanctions under Rule 9011(b)(1). *See Matter of Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 228 (2d Cir. 1991) ("Indeed, because a major purpose behind our bankruptcy laws is to afford a debtor some breathing room from creditors, it is almost inevitable that creditors will, in some sense, be 'frustrated' when their debtor files a bankruptcy petition.") (internal citations omitted). Another major purpose behind our bankruptcy laws is to afford a debtor a fresh start through discharge or reorganization. Thus, sanctions pursuant to Rule 9011(b)(1)'s "improper purpose" clause are inappropriate where delay or frustration to creditors occurs because a debtor needs breathing room to legitimately pursue discharge or reorganization. *Cf. In re Intercorp Int'l, Ltd.*, 309 B.R. 686, 697 (Bankr. S.D.N.Y. 2004) (sanctioning attorney under the improper purpose prong who filed petition to stay foreclosure sale where there was "no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings") (quoting *Cohoes*, 931 F.2d at 227).

Determining whether an investigation was reasonable pursuant to Rule 9011(b)(3) requires a case-by-case, fact intensive analysis dependent on all the circumstances. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 404 (1990). At a minimum, Rule 9011(b)(3) places on attorneys a duty to make at least some affirmative investigation into the facts represented in

documents submitted to the court. *In re Obasi*, 10-10494 SHL, 2011 WL 6336153 at *5 (Bankr.

S.D.N.Y. Dec. 19, 2011). While "the investigation performed by a signatory need not be to the

point of certainty to be reasonable," a "signer must explore readily available avenues of factual

inquiry." *In re Obasi* at *5. (internal citations omitted).

Although an attorney may generally rely on objectively reasonable client representations,

*Hadges v. Yonkers Racing Corp*. 48 F.3d 1320, 1329 (2d Cir. 1995) (internal citations omitted),

the attorney must independently verify publicly available facts to determine if the client

representations are objectively reasonable. *Televideo Sys., Inc. v. Mayer*, 139 F.R.D. 42, 47

(S.D.N.Y. 1991); *In re Withrow*, 391 B.R. 217, 228 (Bankr. D. Mass. 2008), *aff'd*, 405 B.R. 505

(B.A.P. 1st Cir. 2009); *In re Seare*, 493 B.R. 158, 209-11 (Bankr. D. Nev. 2013) (quoting *ABA*

*Attorney Liability* 697 at 704). If independent verification reveals inconsistencies or other

problems, an attorney must "probe further—by asking questions, obtaining additional

documents, or by some other means." *Seare,* 493 B.R. at 211; *In re Dean*, 401 B.R. 917, 920

(Bankr. D. Idaho 2008) ("Simply put, having previously identified that a problem may exist with

the Gladman lien, Beeman could not reasonably rely upon his clients' statements").

"[H]ow much time the attorney had for the investigation" is a relevant factor in the Rule

9011 analysis, *Televideo Sys., Inc.*, 139 F.R.D. at 47, however, the emergency nature of a filing

does not excuse an attorney from this obligation to independently verify publicly available

information and probe further if the attorney is unable to do so. *In re Alessandro*, 10-12511

AJG, 2010 WL 3522255 at *3 (Bankr. S.D.N.Y. Sept. 7, 2010); *In re Moffett*, 10-71920, 2012

WL 693362 at *1 (Bankr. C.D. Ill. Mar. 2, 2012). For instance, in *Seare*, debtor's counsel was

sanctioned for failing to review a judgment obtained by a hospital, where a review would have

revealed that the judgment was for fraud, not medical bills, and thus nondischargeable. *Seare,*

493 B.R. at 211. The court rejected counsel's argument "that he did not have an independent duty to investigate the nature of the Judgment." *Id*. at 176.

Generally, Rule 11 and Rule 9011 impose no continuing duty to amend a paper bearing the attorney's signature. *Oliveri v. Thompson*, 803 F.2d 1265, 1274 (2d Cir. 1986)(rejecting movant's claim that Rule 11 imposes a continuing obligation and holding that "the signer's conduct is to be judged as of the time the pleading or other paper is signed.").

Section 707(b)(4), added to the Bankruptcy Code by the 2005 Amendments, makes it explicit that Rule 9011 applies to debtors' counsel in the context of the filing of the petition and schedules in bankruptcy cases. In addition to, but essentially reflective of, Rule 9011 sanctions, §707(b)(4)(C) provides that "[t]he signature of an attorney on a petition, pleading, or written motion shall constitute a certification that the attorney has— (i) performed a reasonable investigation into the circumstances that gave rise to the petition, pleading, or written motion; and (ii) determined that the petition, pleading, or written motion— (I) is well grounded in fact; and (II) is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and does not constitute an abuse under paragraph (1)." 11 U.S.C. §707(b)(4)(C). Section 707(b)(4)(D) makes it clear that the debtor's counsel's signature on the bankruptcy petition also includes a certification that the attorney "has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect." 11 U.S.C. §707(b)(4)(D).

Section 707(b)(4) (A) and (B) contain certain remedies. Section 707(b)(4)(A) provides that a debtor's attorney may be required to reimburse the trustee for "all reasonable costs in prosecuting a motion filed under section 707(b), including reasonable attorneys' fees" if the court grants a motion by the trustee to dismiss or convert the case under § 707(b), and finds that

the conduct of the debtor's attorney in filing the petition violated Rule 9011.  Section

707(b)(4)(B)  provides that "[i]f the court finds that the attorney for the debtor violated rule 9011

of the Federal Rules of Bankruptcy Procedure, the court, on its own initiative or on the motion of

a party in interest, in accordance with such procedures, may order— (i) the assessment of an

appropriate civil penalty against the attorney for the debtor; and (ii) the payment of such civil

penalty to the trustee, the United States trustee (or the bankruptcy administrator, if any)." 11

U.S.C. §707(b)(4)(B).  Neither §707(b)(4)(A) nor §707(b)(4)(B) contemplate that damages in the

form of attorneys' fees should be payable to a creditors' counsel directly.


### a.  Arguments of the Parties

Desiderio argues that his motion for sanctions was not subject to the safe harbor

provision of Rule 9011 because the motion is based upon information omitted from the Chapter

7 Petition – and the filing of the petition is not subject to the safe harbor provisions.  On the

merits, Desiderio alleges that Pergament violated Rule 9011 by failing to conduct a reasonable

investigation and accurately disclose:  the Debtor's bank accounts, monthly mortgage payments;

co-debtors; income from his spouse; that his income in 2005 was combined with Meena; the

Debtor's job title as described in the petition; the Debtor's monthly income as $866 instead of

$800; the Meera Mortgage; Debtor's interest in Kuliwala, Health Heaven, and Davenil

Consulting; the June 20th Judgment; the $45,000 VRESA transfer;  that a portion of Desiderio's

claim for attorney's fees remained unsecured and should have been listed on Schedule F;

whether Debtor and Meena were separated; documentation of  the amount of Debtor's debts to

credit card companies, Shah & Pandya, or Solomon Lowenbraun; and the Debtor's accountants.

Desiderio also alleges that Pergament violated Rule 9011(b)(1) by filing the petition for an

"improper purpose" because it was patently obvious that the bankruptcy filing was made solely

17

to frustrate Desiderio's collection efforts, and the Debtor had the ability to repay Desiderio.

Desiderio further argues that Pergament's year and a half delay in amending the petition and

schedules once he had actual knowledge of the correct information violates Rule 9011 because

that Rule imposes a continuing duty to correct incorrect information.  Finally, Desiderio seeks to

hold Pergament and WGP jointly and severally liable for these alleged violations.

Pergament responds that Desiderio is procedurally barred from seeking sanctions under

Rule 9011 because he failed to comply with Rule 9011's safe harbor provision, and that

Desiderio's own overly litigious conduct during the case waives, estops, or precludes him from

seeking sanctions.  [AP Dkt # 214].  First, Pergament argues that Desiderio waived his right to

seek Rule 9011 sanctions by filing an adversary proceeding to deny the Debtor's discharge

instead of moving more expeditiously to dismiss this bankruptcy case.  According to Pergament,

the Bankruptcy Code contemplates that bad faith petitions should be met with a timely motion to

dismiss instead of an adversary proceeding because such motions minimize hindsight and

encourages prompt resolution of issues.  Second, Pergament argues that *Cohoes*, 931 F.2d 222

(2d Cir. 1991), which held that a party's failure to expeditiously move to dismiss the petition

estopped him from alleging that the petition violated Rule 9011's requirement to reasonably

investigate whether the petition was warranted by law, requires this Court to deny sanctions.

Similarly, Pergament asserts that the Court's denial of Desiderio's Motion for Summary

Judgment on his "bad faith filing" claims precludes a finding that the petition was frivolously

filed.  Last, Pergament asserts that the Court has already ruled on Desiderio's request for

sanctions in the Decision After Trial and that Desiderio cannot have a "second  bite at the apple."

Substantively, Pergament asserts that he cannot be sanctioned under Rule 9011 for filing

the petition with an "improper purpose" unless the filing is frivolous, and that the filing was not

frivolous.  Pergament asserts that he cannot be sanctioned under Rule 9011 for failing to conduct a reasonable investigation because he is entitled to rely on his client's representations and that any ambiguity as to whether his acts are objectively reasonable should be resolved in his favor. He argues that Desiderio has merely "raised questions" as to whether Pergament and WGP should have accepted the Debtor's representations, and that without more, the dispute should be resolved in Pergament and WGP's favor.  He also asserts that the information omitted from or incorrectly reflected in the bankruptcy petition, was not independently verifiable by him, and that the emergency nature of the filing, based on Debtor's fears of imminent arrest, justifies the level of investigation conducted by his office.  Pergament notes that sanctions under Rule 9011 should be invoked sparingly because a "request for sanctions under Rule 11 is not a tactical device," *In re Taub*, 439 B.R. 276, 281 (Bankr. E.D.N.Y. 2010) (quoting *Nakash v. U.S. Dep't of Justice*, 708 F.Supp. 1354, 1370 (S.D.N.Y.1988)), and that conduct must be egregious to warrant sanctions.  Pergament also argues that the attorney-client privilege precludes him from providing an explanation for his conduct with regard to information that was not verifiable by independent means.

### b.  Safe harbor provisions

The Court finds that Desiderio did not comply with the safe-harbor provision of Rule 9011(c).  This alone precludes the imposition of Rule 9011 sanctions with regard to all papers filed by Pergament in this case – ***other than*** the bankruptcy petition and schedules.  *In re Taub* at 282.  The safe harbor provision does not apply to the filing of the petition because "petitions, unlike papers, claims, defenses, contentions, allegations, or denials, cause immediate collateral effects and, moreover, a petition cannot be withdrawn without the court's consent." *Levey v. Kesser Cleaners Corp.,* 06CV02530(DLI), 2007 WL 2177048 at *3 (E.D.N.Y. July 27, 2007).

In *Levey*, the court concluded that this rationale applied even where the petition had already been

withdrawn and the collateral implications were no longer in effect.  Thus, this Court may analyze

Pergament's role in connection with the filing of the bankruptcy petition and schedules under

Rule 9011, despite Desiderio's failure to satisfy the safe harbor provision, even though Debtor's

discharge has been denied and the exigencies of the situation have waned.

### c.  Attorney client privilege

The Court finds that Pergament was not entitled to rely on his client's representations, so

his attempt to invoke attorney-client privilege, given the unique facts and circumstances of this

case, is fundamentally flawed.  He argues that the attorney-client privilege prevents him from

responding to the allegations against him.  Although the attorney-client privilege bars an attorney

from disclosing the contents of privileged communications, it cannot give Pergament an absolute

defense to the imposition of sanction under the facts in this case.  To hold otherwise, would

allow counsel to circumvent the reach of Rule 11 or other sanctions in connection with factual

misrepresentations made in court filings.  In any event, the Court in this Decision is imposing

sanctions on Pergament for failing to adequately investigate publicly available information

regardless of information his client communicated in confidence.  Under the particular facts of

this case, Pergament had a duty to externally verify the information provided to him by his client

because sufficient red flags existed that should have prompted a further investigation which

would have revealed information to him that should have been included in the Chapter 7

Petition.[5]  The attorney-client privilege cannot shield Pergament from the basic independent

verification he was expected to do.

---

[5] The Court notes that it is not drawing a negative inference from Pergament's invocation of the
attorney-client privilege. *Nabisco, Inc. v. PF Brands, Inc.,* 191 F.3d 208, 225-26 (2d Cir. 1999) *abrogated*

### d. Delay in filing motion to dismiss

The Court finds that Desiderio's decision to file an adversary proceeding instead of a more expeditious motion to dismiss does not preclude sanctions related to filing the Chapter 7 Petition. Several courts have held that sanctions may be imposed under Rule 9011 even after the dismissal of a bankruptcy case. *In re Berger Indus., Inc*., 298 B.R. 37, 40 (Bankr. E.D.N.Y. 2003) (motions for sanctions pursuant to Rule 9011 with regard to the filing of a bankruptcy petition was timely, even though bankruptcy case had closed, because "[i]t is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation, and in the case of motions at the time the motion is decided or shortly thereafter.")(quoting Advisory Committee Note (1983); *In re Mem'l Estates, Inc.,* 116 B.R. 108, 112 (N.D. Ill. 1990); *Matter of Jones*, 117 B.R. 415, 419 (Bankr. N.D. Ind. 1990)(citing *Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 398, 110 S. Ct. 2447, 2457, 110 L. Ed. 2d 359 (1990)("[A] litigant who violates Rule 11 merits sanctions even after a dismissal.")). Thus, Desiderio's failure to seek sanctions against Pergament in a more timely manner is not fatal to the relief he seeks.

### e. Previous denial of Desiderio's motion for summary judgment

The Court finds that the previous denial of Desiderio's motion for summary judgment does not preclude the imposition of sanctions here. Relevant to his argument in this regard, Pergament relies on *Cohoes,* 931 F.2d 222. First, *Cohoes* analyzed sanctions under Rule

---

*on other grounds by Moseley v. V Secret Catalogue, Inc.,* 537 U.S. 418, 123 S. Ct. 1115, 155 L. Ed. 2d 1 (2003). Rather, the Court finds that the record, as a whole, demonstrates that Pergament's actions were objectively unreasonable, regardless of evidence that could have been procured in the absence of attorney-client privilege.

9011(b)(2), which requires attorneys to ensure that their claims are warranted in law. *Id.* at 227. In the Second Circuit, an attorney may only violate Rule 9011(b)(2) if the claims asserted are frivolous. *Id.*  Non-frivolousness is determinative of Rule 9011(b)(2), but is not determinative of Rule 9011(b)(1) which prohibits filings for an improper purpose, or Rule 9011(b)(3), which requires a reasonable investigation into whether facts asserted have evidentiary support.  Thus, the denial of summary judgment does not preclude sanctions for violation of Rule 9011(b)(1) or (b)(3).

Second, the denial of summary judgment in this case was based in large part on disputes over facts that the Debtor eventually conceded, either by amending the petition or stipulating to them prior to trial.  Neither the Debtor nor Debtor's counsel can delay amending the petition or admitting to material facts until after summary judgment is denied, and then use the denial of summary judgment as a defense to sanctions.

Third, *Cohoes* emphasized that the party seeking sanctions in that case gained some advantage from the pendency of the bankruptcy case.  *Id*. at 239. Here, there is no evidence that Desiderio ever gained an advantage from the pendency of this Chapter 7 case.  Thus, *Cohoes* does not prohibit the Court from imposing sanctions under the circumstances of this case simply because the Debtor survived a motion for summary judgment on Desiderio's §707 bad faith filing claims.

### f.  Failure to address sanctions in the Decision After Trial

Pergament writes that the Decision after Trial "denied" Desiderio's motion for sanctions, and that Desiderio's failure to appeal the Decision after Trial prevents him from seeking sanctions now.  [AP Dkt # 214 at 2, 18]. However, on the final day of that trial, this Court made it clear that it was only ruling on the issues presented by the adversary proceeding complaint, and

that sanctions would be addressed in the main bankruptcy case, which at the time was being handled by Judge Eisenberg.  [Trial Transcript 82:13-15, AP Dkt #170].  In any event, Desiderio ultimately filed the Sanctions Motion before this Court, appealed this Court's ruling denying those sanctions, and this matter is squarely back before this Court on remand pursuant to a final Order of the United States District Court for the Eastern District of New York vacating this Court's denial.  This Court can hardly find, at this stage in the proceedings, that Desiderio is precluded from pursuing these sanctions.

### g.  Analysis of Rule 9011(b)(1)

On the merits of the allegations, the Court finds that Pergament's conduct is not sanctionable pursuant to Rule 9011(b)(1), which prohibits filings made for an improper purpose. In its prior Decision in this case, the Court found that the *Debtor*'s sole purpose in filing the petition was to avoid paying Desiderio, even though he appeared to have the ability to do so. *D.A.T.* at 31.  The Court determined that the Debtor had the ability to pay because:  he fraudulently conveyed equity in his home via the Meera Mortgage (as found by the state court); there was a $45,000 withdrawal from the Debtor and Meena's home equity line designed to further deplete the equity in his home; the Debtor had transferred assets to Meena to shield his business assets from collection; the Debtor had paid extensive attorney fees litigating with Desiderio; and Desiderio's judgments appeared to be the only significant debt owed by the Debtor.  *Id.*  The Court has no reason to attribute any of this bad faith conduct to Pergament. Based on the objectively verifiable facts supporting this Court's bad faith finding against the Debtor, the most Pergament should have known, at the time of filing, was that Debtor was involved in a fraudulent conveyance (the Meera Mortgage) and that most of his debts were owed

to Desiderio.  This Court is not prepared to find that Pergament filed this bankruptcy petition with an improper purpose sufficient to sanction him under Rule 9011(b)(1) under these facts.

### h.  Analysis of Rule 9011(b)(3)

However, this Court finds that Pergament's conduct in this case did violate Rule 9011(b)(3) which provides that counsel's signature on a bankruptcy petition is a certification that "after an inquiry reasonable under the circumstances, --  the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. . ."  The Chapter 13 Petition was readily available to Pergament at the time of the preparation and filing of the Chapter 7 Petition.  At a minimum, Pergament should have reviewed the Chapter 13 Petition and schedules and known that there were several discrepancies between the information presented in the Chapter 7 Petition and the Chapter 13 Petition.

First, the Schedule H to the Chapter 13 Petition reflected that Peter Devani was a co-debtor of the Debtor's.  Not only that, Desiderio had filed a proof of claim (#1) in the Chapter 13 case which attaches a copy of a judgment against the Debtor clearly showing that Mr. Devani was jointly and severally liable with the Debtor.  The Court can think of no reason to exclude Mr. Devani from Schedule H to the Chapter 7 Petition other than counsel's failure to conduct an "inquiry reasonable under the circumstances," prior to his certification in Schedule H, that there existed no co-debtors other than Meena.[6]

---

[6] The Court also notes that although Meena was listed in Schedule H, she was only listed as a co-debtor with respect to the first and second mortgage loans.  Pergament knew or should have known that the June 20th Judgment against the Debtor also imposed joint and several liability upon Meena, and she should have been included in Schedule H to the original Chapter 7 Petition.

24

Second, the Chapter 13 Petition, specifically, Schedule J, reflected monthly payments on the Debtor's first mortgage of $823.73.   Despite this, Schedule J to the Chapter 7 Petition reflects a monthly first mortgage payment of $1,700.  In light of this discrepancy, it would have been reasonable for Pergament to obtain from the Debtor a copy of his most recent first mortgage statement.  As we now know, if he had done so, it would have shown that the monthly payment on the Debtor's first mortgage was in fact still $823.73 the month prior to the Chapter 7 Petition Date.  As with the failure to list Peter Devani as a co-debtor, the Court finds that Pergament failed to conduct an inquiry reasonable under the circumstances prior to his certification that the monthly mortgage payment listed in Schedule J to the Chapter 7 Petition was correct.

In fact, although this Court is not prepared to hold that Rule 9011(b) imposes a continuing duty to amend a faulty petition and schedules, the record in this case reflects that Pergament knew or should have known of the inaccuracy of the monthly first mortgage payment as early as January 28, 2008, when he, on behalf of the Debtor, produced mortgage statements to Desiderio in Rule 2004 discovery that reflected monthly first mortgage payments of $823.73 for May through July 2007 (Adv. Doc #191-14 at 5).[7]  Despite having this information in January of 2008, Pergament did not amend the petition and schedules to reflect the correct monthly first mortgage payment until one year later, on January 27, 2009.

The Court and the chapter 7 trustee rely heavily on debtors and debtors counsel to provide truthful and accurate information in the petition and schedules.  Specifically, the information provided in a debtor's schedule I (income) and schedule J (expenses), as well as the "means test" (Official Form 22A) is critical to an analysis of a debtor's good faith in filing the

---

[7] The monthly first mortgage statements were also attached as an exhibit to the motion for summary judgment filed by Desiderio in the adversary proceeding on November 18, 2008.  [AP Dkt  #22-50]. Pergament received electronic notification of the motion upon filing, and was served with a copy of the motion, by regular mail on November 19, 2008.  [AP Dkt #36].

petition as well as whether the debtor should be required to repay a certain portion of his debts in a Chapter 13.  If debtors and debtors' counsel are not held accountable for inaccuracies in the petition and schedules, the system simply will not work.

Third, Pergament signed the Chapter 7 Petition which reflected in Schedule B that the Debtor did not hold any cash, nor did he have any checking or savings accounts as of the Chapter 7 Petition Date.  In addition, the response to Question 11 of the Statement of Financial Affairs indicated that the Debtor did not have any financial accounts that were closed within the one year prior to the Chapter 7 Petition Date.  Pergament failed to reflect the Citibank bank account in the Chapter 7 Petition despite the fact that the account was disclosed in the Chapter 13 case. Specifically, the original Chapter 13 Petition, filed on May 30, 2006, reflected the Citibank account.  Pergament was thus on notice that this bank account existed prior to the Chapter 7 Petition Date, and he failed to reflect it in the Chapter 7 Petition.  Pergament apparently relied on his client's representations that the account was closed more than one year prior to the Chapter 7 Petition Date.  The Court finds, however, that the fact that this bank account was reflected in the Chapter 13 schedules was sufficient to put Pergament on notice of its existence and it would have been a reasonable investigation under the circumstances for Pergament to require of his client an account closing statement.  Absent that, Pergament should have erred on the side of disclosing the bank account.

As with the inaccuracies with respect to the Debtor's monthly first mortgage payment, the Court will note that the record reflects that Pergament did in fact know about the Citibank account  –  and that it was in fact open as of the Chapter 7 Petition Date  – as early as September 29, 2008 when Pergament's office signed an amended response to Desiderio's Rule 2004 discovery request. [AP Dkt #153].  In response to Question 6, which requested the Debtor's bank

statements from January 2001 to July 30, 2007, the Debtor produced documents with Bates

Stamp numbers 000275 through 000657.  In Desiderio's motion for sanctions [AP Dkt #191-17],

Desiderio attached copies of a Citibank bank statement, for Acct. #xxx9420 (the same as was

disclosed in the Chapter 13), held jointly by the Debtor and Meena, showing a $646.67 balance

as of November 6, 2006.  The bottom of that bank statement shows a bates stamp # of 000553 –

which is within the range of the bates numbers of the documents that Pergament produced to

Desiderio in September of 2008.  This clearly shows that Pergament knew, or should have

known, the account was open and held a balance, as early as September of 2008, and yet he

amended neither the Debtor's Schedule B, nor Question 11 of the Statement of Financial Affairs.

The Debtor, in opposition to Desiderio's motion for summary judgment in late 2008, argued that

Desiderio was fully aware of the Citibank account because it was Desiderio who had the account

restrained in November 2006.  However, this is no defense to a failure to disclose an interest in a

bank account, and Pergament should have known that.

Further, in the joint pretrial memorandum, dated October 28, 2009, signed by Pergament,

he admits that "[t]he partial statements of account that were eventually produced by Debtor

indicate that he had a checking account with Citibank which was open and had a positive balance

at least until November 6, 2006."  [AP Dkt #69, at 10].  Yet, the schedules were ***never*** amended

to reflect the existence of the Citibank account.[8]

---

[8] Desiderio also argues that Pergament knew of and failed to disclose one or more bank accounts
at Chase bank.  In the Chapter 13 case, in October of 2006, the Debtor filed an amended Schedule B
which reflected that the Debtor held Chase checking and savings accounts (account numbers ending
X3639-65) jointly with Meena, with a balance of $22.44.  Desiderio's sanctions motion attaches copies of
a "Transaction History" for the Chase Account #xxx3901, showing a $0 balance as of October 17, 2006.
There is a handwritten note on the document, "Account Closed," however, the transaction history shows
that there was a $4.54 balance in the account from July 21, 2006 until August 18, 2006 when a $9.00
service fee created a $4.46 overdraft in the account.  Therefore the record suggests that the Chase account
#xxx3901 was open within the one year prior to the Chapter 7 Petition Date and should have been
reflected in the petition and/or schedules.  However, it is not clear that the Chase account #xxx3901 was

Fourth, the Court finds that the Chapter 7 Petition did not accurately reflect the status of the Meera Mortgage as of the Chapter 7 Petition Date. Pergament was fully aware of the state court Foreclosure Action and the findings made therein. Therefore, he knew or should have known that as of the Chapter 7 Petition Date the state court and not yet entered an order vacating the Meera Mortgage and as a result, as of the Chapter 7 Petition Date, the Meera Mortgage was a valid lien on the Debtor's residence. Admittedly, it was a mortgage that was subject to vacatur, but this does not justify the manner in which Pergament reflected the Meera Mortgage in the Chapter 7 Petition. To list the litigation in response to Question 4 of the Statement of Financial Affairs and simply note that the action was "to be discontinued" was the kind of partial and inaccurate disclosure that is inexcusable.

Fifth, the Court finds that Pergament's failure to include the Debtor's ownership interests in Kuliwala Food Corp. in Schedule B of the Chapter 7 Petition was the result of Pergament's failure to conduct a reasonable inquiry under the circumstances. Amended Schedule B to the Chapter 13 Petition, filed on October 16, 2006, shows that the Debtor reported having a 70% ownership interest in Kuliwala at least as of the Chapter 13 Petition Date. Despite this, the Chapter 7 Petition as originally filed does not contain ***any*** reference to Kuliwala. Given the prior disclosure of this corporate interest, it would have been reasonable under the circumstances, for Pergament to conduct a search of corporate filings to objectively verify the information given to him by his client. As it turns out, in September of 2007, Pergament filed an amended Schedule B to list, among other things, a 100% interest in Kuliwala, as "nominee."

---

the same as that which was disclosed in the Chapter 13 Petition and schedules. In fact, the account numbers do not match. Therefore, the Court will not attribute knowledge of this open Chase account to Pergament as of the date of the Chapter 7 Petition such that his conduct for failing to include it in the Chapter 7 Petition would be sanctionable under Rule 9011(b)(3).

Sixth, the Debtor testified at trial that prior to filing the Chapter 7 Petition, he provided Pergament's office with a draft of his 2006 tax return prepared by his accountant, Shah & Pandya, C.P.A. [Trial Transcript, June 6, 2010 [AP Dkt #169] at 166:20-167:5, Exh. 29]. This draft showed gross income by the Debtor of $10,036, tax liability of $1,418, listed the Debtor's job title as "manager," and identified Shah & Pandya, C.P.A. as tax preparers. [AP Dkt #191-24]. Pergament never denied that this draft was provided to him pre-petition. The fact that the Debtor's income and income tax liability reflected in that draft tax return was exactly the same as what was reported in the Chapter 7 Petition also suggests that his office had the draft tax return when it prepared the Chapter 7 Petition. Yet in response to Question 19 of the Statement Financial Affairs – which requires debtors to list bookkeepers and accountants who have "keep or supervised the keeping of books of account and records" of the debtor, who have "audited the books of account and records, or prepared a financial statement of the debtor," or who possessed the books of account and records of the debtor – does not disclose Shah & Pandya, C.P.A. The Statement of Financial Affairs was not amended until January of 2009 to disclose the Debtor's accountants. The Court finds that Pergament had this information prior to filing the Chapter 7 Petition, and it should have been included with the original filings.

Finally, Pergament asserts that the "emergency" nature of the filing of the Chapter 7 Petition excuses the deficiencies in the petition as originally filed, and that the petition was amended "as information was obtained and provided to us." [AP Dkt #214 at 5]. He claims that because the Debtor "was facing an imminent arrest due to a state court finding of contempt. . . we filed a bare bones bankruptcy petition to avoid having him arrested." *Id.* First, the Court notes that the arrest warrant was issued on April 3, 2007. The Chapter 7 Petition was not filed until July 30, 2007. If there were truly an emergency here, the bankruptcy would have been filed

shortly after the April 3rd arrest warrant. Even so, the emergency nature of a bankruptcy filing does not necessarily excuse compliance with Rule 9011(b). *See In re Alessandro*, 10-12511 AJG, 2010 WL 3522255 at \*3 (Bankr. S.D.N.Y. Sept. 7, 2010); *In re Moffett*, 10-71920, 2012 WL 693362 at \*1 (Bankr. C.D. Ill. Mar. 2, 2012). Second, the Chapter 7 Petition was not "bare bones." Rather, most if not all of the required schedules were attached to the petition – they just were not accurate. If Pergament had checked the Chapter 13 Petition and conducted an independent verification of the information provided to him where inconsistencies existed, he would have known that the Chapter 7 Petition was not accurate. Finally, as previously explained, Pergament's contention that the petition was amended as information was provided to them, is just not true.

For all of the foregoing reasons, the Court finds that Pergament's conduct is sanctionable pursuant to Rule 9011(b)(3). [9]

### i.  Section 707(b)(4)

Having found that Pergament's conduct violates Rule 9011(b)(3), the Court declines to engage in a separate analysis of his conduct under §707(b)(4). First, without deciding this issue, it is not entirely clear to the Court that Desiderio has standing to seek relief under §707(b)(4). *See* 11 U.S.C. §707(b)(6) ("Only the judge or United States trustee . . . may file a motion under section 707(b) . . ." if a debtor's current monthly income is below the median). Second,

---

[9] The Court declines to find that Pergament should be held accountable under Rule 9011(b) for the remainder of the inaccuracies in the Chapter 7 Petition. Pergament appears to have included the monetary award in the June 20th Judgment within the scheduled amount of Desiderio's claim. He included Meena's income, and an accurate estimate of Debtor's monthly second mortgage obligations in the Chapter 7 Petition. *See* AP Dkt #139. The Court finds that the remainder of the inaccuracies of which Desiderio complains were not independently verifiable by Pergament and therefore he will not be sanctioned for failing to conduct an "inquiry reasonable under the circumstances."

§707(b)(4) does not provide Desiderio with any direct claim against Pergament to collect his legal fees incurred in this bankruptcy case.  *See* 11 U.S.C. §707(b)(4)(C) and (D).[10]

Third, even if he had standing and a separate claim for damages, this Court declines to award monetary sanctions for Pergament's conduct in this case.

Finally, this Court finds that the safe harbor provisions of Rule 9011(c) also apply to a motion for sanctions under 11 U.S.C. §707(b)(4).  As a result, even if the statute did give him an individual remedy, any attempt by Desiderio to apply §707(b)(4) beyond the initial filing of the bankruptcy petition – which has already been addressed under Rule 9011(b)(3) – fails.  *Cf  In re OBrien*, 443 B.R. 117, 144 (Bankr. W.D. Mich. 2011) ("If the Attorney has violated her obligations [under §707(b)(4)(C) and (D)], she may be held accountable in accordance with Bankruptcy Rule 9011(c)").   Section 707(b)(4)(C) and (D) should be read in conjunction with §707(b)(4)(A) and (B), which both refer specifically to Rule 9011 and/or the "procedures described in rule 9011 of the Federal Rules of Bankruptcy Procedure."  A finding that the safe harbor provisions do not apply to sanctions under §707(b)(4)(C) and (D) would eviscerate the safe harbor provision of Rule 9011.  As this Court previously stated, § 707(b)(4) sanctions were intended to be an explicit extension of Rule 9011 sanctions to debtor's counsel into the bankruptcy context.  *See In re Withrow*, 07-41243-HJB, 2008 WL 2945423 at *2 (Bankr. D. Mass. July 25, 2008) ("§§ 707(b)(4)(C) and (D) parallels Rule 9011.  It created no new standard.  It simply codified and put an exclamation point on Rule 9011 in the preparation of certain documents.").  The standards under both provisions are similar, and if §707(b)(4)(C) and (D) did not require compliance with the safe harbor provision of Rule 9011, a moving party could do an

---

[10]    Moreover, §707(b)(4)(A) and (B) do not allow for attorney's fees to the moving party, they merely allow for reimbursement to the trustee, United States trustee, or bankruptcy administrator, if any. Because analysis under §707(b)(4)(C) and (D) are redundant under these facts based on Desiderio's failure to comply with the safe harbor provision of Rule 9011, this Court declines to address whether §707(b)(4)(C) and (D) ever allow for the award of attorney's fees to the moving party.

end run around Rule 9011 safe harbor provisions in the bankruptcy context by simply moving under §707(b)(4) instead.  This would be an absurd result and minimize the safe harbor's "salutary effect of providing appropriate due process considerations to sanction litigation, reducing Rule 11 volume and eliminating abuses proscribed by this Rule." *Photocircuits Corp. v. Marathon Agents, Inc.*, 162 F.R.D. 449, 452 (E.D.N.Y. 1995); *See also In re Pennie & Edmonds LLP*, 323 F.3d 86, 91 (2d Cir. 2003).

### j.  Remedy

The Court must exercise its discretion to determine the nature of the appropriate sanction. Possible sanctions include an award of attorney's fees, but they can also include a range of other actions, from reprimand to disbarment. *Matter of Omega Trust*, 120 B.R. 265, 270 (S.D.N.Y. 1990).  Generally, the Court should award the minimum sanction necessary to deter future sanctionable conduct.  *Id*. at 271. The Court may also consider, *inter alia*, the reasonableness of costs and expenses incurred by the party seeking sanctions, prejudice suffered by the party seeking sanctions, the relative culpability of client and counsel, the degree to which the party seeking sanctions caused the expenses for which recovery is sought, whether the sanctionable conduct was a conscious disregard of duty, and the general reputation of the individual to be sanctioned.  *Id.* at 271; *In re Witt,* 481 B.R. 468, 480 (Bankr. N.D. Ind. 2012) (censure was appropriate sanction under Rule 9011 where there was no "conscious disregard of [attorney's] obligations under Rule 9011."); *In re Martinez*, 393 B.R. 27, 41 (Bankr. D. Nev. 2008) (public reprimand was sufficient to deter future violations of Rule 9011 based on attorney's "general reputation" for "appear[ing] regularly before [the] court, and…[being] courteous and civil in all matters.").

The Court does not find that Pergament engaged in a conscious disregard of his duties. Mainly, the Court believes that Pergament's conduct in this case was careless and easily addressed by a change in Pergament's office procedures related to intake and preparation of bankruptcy petitions.  Pergament is a respected practitioner before this Court, and the Court is confident that in the future he will conduct sufficiently reasonable investigations under Rule 9011.  Based on a consideration of all of the above factors, the Court finds that publication of this Decision is a sufficient sanction against Pergament and WGP pursuant to Rule 9011, and it is within this Court's discretion to decline the imposition of monetary sanctions for violation of those provisions.

The Court finds that WGP is jointly and severally liable for Pergament's sanctions pursuant to Rule 9011 because no extraordinary circumstances exist that would exclude the law firm from liability. *See* Rule 9011(c)(1)(A).

### ii. *Bad faith and sanctions pursuant to 11 U.S.C. §105, the Court's inherent power and 28 U.S.C. §1927*

Desiderio argues that, even if the delay in amending the schedules did not violate Rule 9011, it unreasonably and vexatiously multiplied the proceedings in violation of 28 U.S.C. §1927, and could be subject to sanctions pursuant to 11 U.S.C. §105 and this Court's inherent power because Pergament's conduct was in bad faith, vexatious, wanton, or oppressive. Desiderio also asserts that Pergament engaged in discovery misconduct and filed frivolous motions.

With regard to §105,  §1927 and this Court's inherent power to sanction, Pergament responds that bad faith is required under each theory, and a finding of bad faith sufficient to

dismiss the petition does not necessarily include a finding of bad faith on the part of the attorney sufficient to impose sanctions. *In re HBA E., Inc.*, 101 B.R. 411, 418 (Bankr. E.D.N.Y. 1989).

11 U.S.C. § 105 provides that:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

*Id.*

Section 105 may provide a basis to impose sanctions, but only against bad-faith conduct and only when it is tied to a specific provision of the Bankruptcy Code, "rather than to further the purposes of the Code generally…and not merely [tied] to a general bankruptcy concept or objective." *In re Smart World Technologies, LLC*, 423 F.3d 166, 184 (2d Cir. 2005) (internal quotation marks and citations omitted).

A court may use 28 U.S.C. §1927 to sanction attorneys for bad-faith conduct that is not necessarily "entirely without merit" or tied to a specific Code provision, but which unnecessarily delays the proceedings. 28 U.S.C. §1927 provides that:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

"The purpose of the statute is to deter unnecessary delays in litigation." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) (quoting H.R.Conf.Rep. No. 1234, 96th Cong., 2d Sess. 8, reprinted in 1980 U.S. Code Cong. & Ad. News, 2716, 2782); *See Hudson Motors Pushup v. Crest Leasing Enterprises, Inc.,* 845 F. Supp. 969, 978-79 (E.D.N.Y. 1994) (describing non-exclusive list of examples of conduct that violates §1927). Courts within the Second Circuit construe § 1927 "narrowly and with great caution, so as not to stifle the enthusiasm or chill the

creativity that is the very lifeblood of the law." *Money v. Comer of Internal Revenue*, 774 F.2d 570, 574 (2d Cir.1985)(internal citations omitted).  The imposition of sanctions pursuant to 28 U.S.C. §1927 is discretionary, and courts may decline to award sanctions even where conduct has unreasonably or vexatiously multiplied the proceedings in the interest of justice, such as when the party seeking sanctions is primarily responsible for the multiplication of the proceedings.  *Oliveri,* 803 F.2d at 1279 (reversing award of sanctions where moving party caused the delay in proceedings).

A bankruptcy court also "has inherent authority to sanction parties appearing before it for acting in bad faith, vexatiously, wantonly, or for oppressive reasons." *In re 680 Fifth Ave. Associates*, 218 B.R. 305, 323 (Bankr. S.D.N.Y. 1998).  In the Second Circuit, inherent power sanctions are appropriate only if there is clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes.  *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir.2009); *Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir.1985) ("The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice.").  Specifically, "[c]onduct is entirely without color when it lacks any legal or factual basis; it is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the attorney." *Wolters Kluwer Fin. Servs.* 564 F.3d at 114.

Sanctions under §105, §1927, and the Court's inherent power all require bad faith, and the bad faith analysis under each is generally the same requiring clear and specific findings of bad faith.  *Oliveri*, 803 F.2d at 1273 ("[W]e hold today that an award made under § 1927 must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent power. Indeed, the only meaningful difference between an award made under § 1927 and one

made pursuant to the court's inherent power is, as noted above, that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.") (internal citations omitted); *In re Negosh*, 06-CV-5617 (JS), 2007 WL 2445158 at *10 (E.D.N.Y. 2007) ( "In imposing sanctions pursuant to Section 105(a), courts have required a showing of bad faith similar to that required in imposing sanctions under the court's inherent power."); *In re Smith*, BR 896-80189-478, 2011 WL 222146 at *3 (E.D.N.Y. Jan. 21, 2011) (sanctions were a "close call" but the court declined to sanction under 28 U.S.C. §1927 where it could not "state with certainty that Appellants acted in bad faith"); *But see Wilder v. GL Bus Lines,* 258 F.3d 126, 130 (2d Cir. 2001) (requiring bad faith, negligence or recklessness in performing responsibilities as an officer of the court) (citing *United States v. Seltzer*, 227 F.3d 36, 40 (2d Cir.2000)).

The Court declines to sanction Pergament pursuant to either its inherent power, 28 US.C. §1927, or §105 because the record does not allow a specific, clear finding of bad faith. The circumstances of this case do not support inferring bad faith; Pergament made no affirmative misrepresentations to the Court and the petition as whole was not so utterly without merit that bad faith can be presumed. Nor is the Court prepared to find that Pergament's conduct rose to the level of negligence or recklessness.

Further, under 28 U.S.C. §1927, even if the Court were to find that Pergament acted "unreasonably or vexatiously," it cannot find that his conduct was the cause of the "multiplication" of these proceedings. To the contrary, if anyone is to blame for the overly litigious nature of these proceedings, it is Desiderio. Desiderio's counsel has been more than a zealous advocate in this case and his conduct in seeking to collect sanctions and attorneys' fees

from the Debtor, Meena and their counsel at every turn has bordered on the fanatical.   As this Court previously found, the Debtor filed this case in bad faith, and his conduct in this case warranted a denial of discharge, which is the one of the most severe penalties to be imposed on a Chapter 7 debtor.   To the extent Desiderio complains of Pergament's conduct during discovery, that misconduct was addressed by the prior monetary sanctions awarded against him, as well as the decision by Judge Eisenberg to limit the parties' use of certain evidence at trial.

To date, according to this Court's calculations, Desiderio has total pre-petition judgments against the Debtor for over $152,675.62, including interest, all stemming from *actual damages* of $76,143.97.[11]   He also obtained a monetary award in the bankruptcy case jointly and severally against Debtor, Meena, Pergament and WGP  in the amount of $6,758.10.   This means that Desiderio has at least obtained judgments against the Debtor, on account of legal fees, expenses and/or sanctions, in the amount of approximately $83,289.75.   He also seeks an additional $128,635.83 in pre-petition legal fees that have not been reduced to judgment, which means that, not including what he seeks in this motion for sanctions, he has already sought $211,925.58 in legal fees in connection with only $76,143.97 in actual losses.   (Attachment to Claim #1-1).   In this Motion, Desiderio seeks an additional $253,953.69 in legal fees for his work in the bankruptcy case, which means that he seeks a total of $465,579.27 in fees, almost ten times the amount of his actual damages. [AP Dkt #191-26].

The Court is not suggesting that Desiderio was not entirely within his rights to seek and obtain monetary relief against the Debtor, Meena and Pergament, but it also will not grant Desiderio the relief he seeks against Pergament for unnecessary multiplication of these proceedings under 28 U.S.C. §1927.

---

[11] Desiderio was able to offset this loss by obtaining a $30,000 judgment in a legal malpractice suit against the attorney who represented him negotiating the promissory note and lease, so Desiderio's true damages are only $46,143.97.

### iii.    *Taxation of costs -- 28 U.S.C. §1920*

Section 1920 sets forth examples of the types of costs that may be shifted to an opposing party if costs are in fact shifted, such as filing, transcription, expert witness and other fees associated with the litigation.  28 U.S.C. §1920.  Section 1920 does not, however, create a basis for shifting costs.  It merely enumerates and limits the costs that may be taxed when a court *does* shift costs.  *See* ("Section 1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d).  It is phrased permissively because Rule 54(d) generally grants a federal court discretion to refuse to tax costs in favor of the prevailing party.")

In proceedings governed by the Federal Rules of Civil Procedure, §1920 is read in conjunction with Fed. R. Civ. P. 54(d)(1), which states that " costs--other than attorney's fees--*should* be allowed to the prevailing party." (emphasis added).  However, the Bankruptcy Rules do not incorporate Fed. R. Civ. P. 54(d) into bankruptcy proceedings.   Instead, Fed. R. Bankr. P. 7054(b), states that "[t]he court *may* allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides." Fed. R. Bankr. P. 7054(b) (emphasis added)

Desiderio seeks relief under 28 U.S.C. §1920, but did not cite to Rule 7054.  Even if he did cite to it, cost-shifting under that Rule is discretionary.  A prevailing party is not necessarily entitled to cost-shifting in bankruptcy.  Several other statutes allow for the costs defined in 28 U.S.C. §1920 to be shifted in bankruptcy proceedings, but none apply here.  *See* 11 U.S.C. §110(j)(1) and (4); §303(i); § 362(k)(1); §363(n); §502(b); §506(b); §523(d); §526(a)(3); §707(b)(4)(A) and (b)(5)(A); Fed. R. Bankr. P. 7041, 7068 and 8014.  Absent some more specific cost-shifting statute relevant to these proceeding which *require* the Court to shift costs, the Court will not do so.  For all of same reasons described earlier in this Decision to support this Court's denial of sanctions against Pergament under 28 U.S.C. §1927, this Court declines to tax

costs against Pergament or the Debtor in this case.  Desiderio's legal fees and expenses in this case are partly attributable to Desiderio's legitimate concerns in this case, but largely attributable to his own litigiousness.  If, in fact, Desiderio has a contractual basis to collect reasonable legal fees and expenses in connection with collection of his debt, he can do so outside of the context of these proceedings.

### iv.        *Damages caused by the increase in New York's homestead exemption*

Finally, Desiderio seeks $100,000.00 in damages from WGP and Pergament resulting from the increase in the New York homestead exemption during the pendency of this case, from $50,000 to $150,000 in January of 2011.  Desiderio argues that he would have been able to satisfy his pre-petition judgment lien(s) from substantial equity in the Debtor and Meena's home if this case had not been delayed as a result of the misconduct in this case by the Debtor, Meena, Pergament and WGP.  Desiderio does not cite any authority for the premise that he may recover damages caused by an increase in the Debtor's available homestead exemption.

Desiderio's request for damages due to the change in the New York homestead exemption during the pendency of this case is denied.  First, were there to be a sale of the real property in this case by the Trustee and subsequent distribution to creditors from the non-exempt equity, it is the homestead exemption *on the date of filing* that would be relevant, not on any subsequent date.  *See* 11 U.S.C. §522(b)(3).  Second, it is only within the bankruptcy context, specifically § 522(f) of the Bankruptcy Code, that the homestead exemption can be used to avoid the fixing of a judgment lien to the extent that it impairs the homestead exemption.  Outside of bankruptcy, a judgment debtor cannot use the homestead exemption to come ahead of or avoid payment of a judgment lien, if there is a surplus above consensual liens, upon foreclosure by a mortgagee.  *See First Federal Savings and Loan Assn v. Brown*, 434 N.Y.S.2d 306 (N.Y. App.

Div. 4th Dept. 1980).  Even if the Court were to attribute the substantial delays in administering this case to the Debtor, Meena, Pergament and /or WGP, it could not find that the change in the New York homestead exemption caused any monetary damage to Desiderio.  Nor can this Court find any authority, and Desiderio has cited to none, to impose damages for such a change in the law during the pendency of a bankruptcy case.

## B.        *Sanctions against the Debtor*

In the Motion, Desiderio seeks to impose monetary sanctions against the Debtor in an amount equal to all of Desiderio's legal fees and expenses incurred in connection with this bankruptcy proceeding.  Initially, Desiderio contends that he is entitled to such fees and expenses under the terms of the contract entered into by the Debtor and Desiderio pre-petition.  Next, he cites to 11 U.S.C. §105 and 28 U.S.C. §1920, and argues that sanctions are appropriate because the Debtor filed the petition in bad faith, engaged in discovery misconduct, filed frivolous motions, and lied at his § 341 meeting.  Pergament responds that the finding of bad faith sufficient to dismiss the Chapter 7 Petition does not automatically require sanctions.

First, Desiderio's claim for legal fees and expenses against the Debtor in this case under a pre-petition contract theory fails.  Generally, only an *oversecured* creditor is entitled to a claim for legal fees and expenses incurred during the pendency of the bankruptcy case.  *See* 11 U.S.C. §506(b).  Even then, the allowance by the bankruptcy court of post-petition legal fees and expenses of an oversecured creditor is only relevant as part of the *claims allowance* process.  In this case, the Trustee has indicated that there will be no distribution to creditors, secured or unsecured, and therefore there is no point in allowing or disallowing claims in this case.  This Court has already denied the discharge in this case and so the bankruptcy discharge will pose no

bar to Desiderio pursuing the Debtor outside of bankruptcy for any legal fees and expenses that he may be entitled to under the contractual agreements between the parties.

Second, the Court declines to impose further monetary sanctions against the Debtor under the other theories asserted by Desiderio. Although the Court recognizes that it made specific findings of bad faith conduct by the Debtor in connection with the filing of the Chapter 7 Petition, it is clear in this case that the imposition of monetary sanctions against the Debtor at this stage of the proceedings will serve no purpose. First, the Debtor has already received the ultimate sanction for his conduct in connection with this bankruptcy case: the denial of discharge. At the conclusion of these proceedings – nearing seven years in duration – the Debtor will have received no relief in the form of a bankruptcy discharge. Although denial of discharge does not automatically preclude sanctions under Rule 9011(b)(1) for filing a petition for an improper purpose, in this case, additional sanctions would not add any deterrence value. Second, the record in this case reflects that the Debtor is no longer living in the United States, and perhaps is living in India. Any monetary sanctions issued by the Court at this point might be largely unenforceable and/or uncollectible. Nonetheless, as a result of denial of the discharge, Desiderio is free, upon this case closing, to pursue the Debtor in a non-bankruptcy forum for any and all damages to which he believes he is entitled. Finally, the Court will not impose costs against the Debtor pursuant to 28 U.S.C. §1920 for the same reasons explained earlier in this Decision with respect to imposition of costs against Pergament.

### C.    Sanctions against Meena

The Court finds that the only possible basis to impose sanctions upon Meena, a non-debtor and non-attorney, in this case would be pursuant to this Court's inherent power.[12]  A non-party may only be sanctioned pursuant to the Court's inherent power if they (1) violate a specific Court order or (2) act in bad faith, have a substantial interest in the litigation, and play a substantial role in the litigation. *Amerisource Corp. v. Rx USA Int'l Inc.*, 02-CV-2514 (JMA), 2010 WL 2730748 at *5-6 (E.D.N.Y. July 6, 2010) *aff'd sub nom. New York Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.,* 432 F. App'x 25 (2d Cir. 2011) ) (sanctioning majority shareholder and chief executive who managed litigation and represented the party-defendant "at every step") (citing *Helmac Products Corp. v. Roth (Plastics) Corp.,* 150 F.R.D. 563, 564–68 (E.D.Mi.1993)); *Helmac*, 150 F.R.D. at 564-65 (sanctioning owner and principal of debtor who was "as much involved in the litigation as any party would be").  Courts have occasionally held that other non-parties are subject to sanctions under *Helmac*.  *See In re Novak*, 932 F.2d 1397, 1408 (11th Cir. 1991) (nonparty insurers have real stake in the litigation because they are financially liable for judgments against the insured);  *Bartos v. Pennsylvania*, CIV.1:08-CV-0366, 2010 WL 1816674 (M.D. Pa. May 5, 2010) (finding that witnesses substantially participated in employment discrimination action by engaging in egregious conduct like lying and forwarding disparaging reports about Plaintiff to employer and had a substantial interest because they were still employed by Defendant); *In re White*, 2:07CV342, 2013 WL 5295652 (E.D. Va. Sept. 13, 2013) (Neo-Nazi leader who sent packages containing racial epithets, swastikas, and threats to Plaintiffs in housing discrimination action and threatened and posted

---

[12] Only attorneys may be sanctioned pursuant to 28 U.S.C. §1927, and only *parties* or attorneys may be sanctioned pursuant to Rule 9011.  Section 105 sanctions may only be applied in order to further some other Code provision, in this case, §707(b)(4)(C) and (D), and those sections are directed only to debtors' attorneys.  As discussed above, the Court will not shift costs under 28 U.S.C. §1920.

personal information of Plaintiff's counsel and his wife to the internet substantially participated in the litigation to subject him to inherent power sanctions).

With regard to Meena's alleged substantial interest in these proceedings, Desiderio argues that Meena is the Debtor's spouse, she funded his case, and assisted the Debtor "every step of the way." (Sanctions Motion at 23). With regard to her substantial participation in this case, Desiderio argues that Meena (1) was a "willful participant" in fraudulent conveyances by the Debtor, (2) made false statements under oath, (3) submitted an affidavit she knew to be false regarding the debtor's income, (4) "engaged in dilatory, evasive and contemptuous conduct intended to hinder, impair and impede Plaintiff," and (5) funded Debtor's bankruptcy case. (Sanctions Motion at 20-23).

Pergament asserts that Desiderio's allegations against Meena are irrelevant because they did not involve the violation of a Court order and because Meena did not act in bad faith.

The Court declines, under the facts of this case, to sanction Meena. Unlike the cases above, Desiderio points to no "substantial interest" by Meena other than her status as a spouse who funded her husband's case and assisted him. Desiderio does not point to a single case where a spouse, or any family member, was held to have a substantial interest in a proceeding sufficient to sanction. If the Court adopts Desiderio's argument that Meena has a "substantial interest" in this proceeding sufficient to subject her to non-party sanctions absent violation of a Court order, the Court would be expanding its jurisdiction over debtors' spouses well beyond the confines of existing law. This the Court declines to do.

Even if her conduct was sufficient to create a substantial interest in this case, Meena did not substantially participate in the proceeding. Meena testified, in person and via affidavit, and was the subject of subpoenas. This alone is insufficient to establish sufficient participation. Her

participation in the fraudulent conveyances outside of these proceedings does not implicate participation within the Court proceedings.   In fact, even if this Court had jurisdiction to sanction Meena, it would not do so because it can point to no conduct by Meena within these proceedings that would subject her to sanctions.

Because Meena lacked substantial interest and did not substantially participate, the Court may only sanction her pursuant to its inherent powers if she violated a specific Court order.  The only order Meena may arguably have violated was Judge Eisenberg's November 4, 2008 Order, and that Order delineated the specific sanctions that would apply if it was violated.  Sanctions pursuant to that Order are addressed in this this Decision, and this Court will not address Meena's alleged violation of that Order pursuant its inherent powers.

**D.      *Motion to Enter Judgment on Judge Eisenberg's November 4, 2008 Order***

On October 10, 2007, Desiderio filed a motion for permission to conduct Rule 2004 examinations of the Debtor and Meena.  [BK Dkt #14].  Desiderio sought Rule 2004 discovery "to investigate the truthfulness of the Debtor's claims with respect to his salary and ownership interests in Health Heaven, Inc., Dave's Health Foods, Kuliwala Food Corporation, and/or any other business interest which the Debtor failed to disclose in his petition and schedule."  [BK Dkt #14, ¶ 40].   He requested an examination of the Debtor and Meena regarding the circumstances surrounding: (a) their acquisition of Dave's Health Foods and/or any other business ownership interest; (b) their financial status; (c) the acquisition and disbursement of the $300,000 mortgage obtained from Meera Management, LLC; and (d) such other matters bearing on the potential discovery of assets of the Debtor's estate.  [BK Dkt #14, ¶ 41].

Over the objection of the Debtor and Meena, Judge Rosenthal entered the Rule 2004 order on November 29, 2007.  [BK Dkt #31].  Desiderio served Rule 2004 discovery requests on November 30, 2007, and then a supplemental request on February 14, 2008.

In January, 2008, the Debtor and Meena produced partial responses and objections to the initial Rule 2004 subpoenas, and on February 19, 2008, filed a motion for protective order arguing that the document requests were irrelevant, overbroad and overburdensome. [BK Dkt #43].  Desiderio opposed the motion for protective order and moved to hold the Debtor and Meena in contempt for failure to comply with the Rule 2004 subpoenas. [BK Dkt #47].  Shortly thereafter, on March 27, 2008, Desiderio filed a complaint against the Debtor seeking to dismiss the bankruptcy case as a bad faith filing, to deny the Debtor's discharge and/or determine the debt owed to Desiderio to be non-dischargeable.  *See* 11 U.S.C. §§ 707, 727 and 523.  The basis for the complaint – 26 pages in total – was the Debtor's alleged failure to disclose a variety of business interests in this petition and schedules, as well as other material misstatement and/or omissions.  The Court notes that this appears to be the same subject matter on which Desiderio sought Rule 2004 discovery.

 At a hearing held on May 29, 2008, Judge Eisenberg denied the Debtor and Meena's motion for protective order, and granted Desiderio's motion for sanctions against the Debtor and Meena for their failure to comply with the Rule 2004 subpoenas.  Judge Eisenberg found that the filing of the adversary proceeding on March 27, 2008 did not necessarily preclude the Debtor's and Meena's obligations to comply with a previously issued Rule 2004 order.  Prior to entry of the Order memorializing this ruling, on June 26, 2008, the Debtor and Meena moved to reconsider the Court's decision.  [BK Dkt. #57].  At the same time, the Debtor filed a motion in the adversary proceeding to compel discovery that had commenced under the Federal Rules of

Civil Procedure. [AP Dkt #6].  The Debtor's motion to compel discovery in the adversary proceeding was denied by Order, dated July 28, 2008. [AP Dkt #10].

On September 4, 2008, Desiderio moved to compel discovery in the adversary proceeding, [AP Dkt #11], and on October 18, 2008, Judge Eisenberg entered an Order requiring the Debtor to respond to discovery requests in the adversary proceeding by October 24, 2008. [AP Dkt #19].

On September 29, 2008, the Debtor and Meena provided Desiderio with supplemental document responses to the Rule 2004 discovery.

On November 4, 2008, Judge Eisenberg denied the Debtor and Meena's motion for reconsideration and entered an Order granting Desiderio's March 10th contempt motion and sanctioning the Debtor and Meena $100 per day *payable to Desiderio* "for every day as of the date of [the] Order until they produce the documents demanded pursuant to the Rule 2004 Subpeona, Examination Order, and the Supplemental Document Request, and appear for examination . . ."[13]  [BK Dkt. #72].  Two weeks later, on November 18, 2008, Desiderio filed a motion for summary judgment in the adversary proceeding arguing that based on the facts as established by his voluminous exhibits, judgment should enter in his favor in the adversary proceeding as a matter of law.  The motion for summary judgment was denied by Order, dated April 2, 2009.

On January 23, 2009, Desiderio filed a motion in the adversary proceeding to strike the Debtor's answer and enter default against the Debtor for his failure to comply with the Rule 2004 subpoena(s).  In that motion, Desiderio also sought to impose further sanctions against the

---

[13] The November 4, 2008 Sanctions Order also sanctioned the Debtor, Meena and WGP, jointly and severally, for certain attorney's fees and costs incurred by Desiderio, in the sum of $6,758.10.  It is this Court's understanding that the $6,758.10 sanction was paid and the Desiderio is not seeking judgment for that portion of the sanctions awarded by Judge Eisenberg in the November 4, 2008 Sanctions Order.

Debtor for this alleged failure to comply, including apprehension and incarceration by the United States Marshal Service. [AP Dkt #32]. On March 17, 2009, the Debtor filed a motion to dismiss the adversary proceeding for failure to comply with discovery under the Federal Rules of Civil Procedure. [AP Dkt #36]. On April 2, 2009, Judge Eisenberg entered an Order prohibiting either party from producing at trial any document or record that was not previously produced to opposing counsel. [AP Dkt #42]. Judge Eisenberg specifically deferred ruling on Desiderio's request for monetary and other sanctions for failing to comply with the Rule 2004 subpoenas, and that portion of Desiderio's motion, [AP Dkt#32], was pending at the time of the trial conducted by this Court from November 2009 through June 2010.

Although not articulated in this Court's Decision after Trial, it was this Court's belief that the entry of a judgment denying the Debtor's discharge sufficiently addressed and mooted Desiderio's request for civil contempt sanctions against the Debtor for failing to comply with Rule 2004 discovery requests. In addition and more significantly, prior to trial Judge Eisenberg had already issued an order prohibiting the use at trial of any document not previously exchanged in discovery. Regardless of whether the Debtor and Meena had produced each and every document requested in the Rule 2004 subpoenas, they claim to have given Desiderio all of the documents in their possession and control that were responsive to the subpoenas. Moreover, the documents sought in the Rule 2004 subpoenas were intended, among other things, to provide Desiderio with the very information he used to successfully prosecute his § 727 objection to discharge. This alone indicated to this Court that the Rule 2004 examinations had served their intended purpose. It is also this Court's belief that, although early on in the adversary proceeding Judge Eisenberg found it appropriate to continue to enforce the Rule 2004 subpoenas, it is generally appropriate upon the filing of an adversary proceeding – on the same facts that are

the subject of Rule 2004 subpoenas – to abandon enforcement of the Rule 2004 subpoena – which is generally very broad in scope – and defer to the discovery rules under the Federal Rules of Civil Procedure with all its procedural safeguards.  *In re Enron Corp.,* 281 B.R. 836, 840 (Bankr.S.D.N.Y.2002) ("[O]nce an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil Procedure and not by Rule 2004"); *See also In re Glitnir banki hf.*, 08-14757 SMB, 2011 WL 3652764 at *4 (Bankr. S.D.N.Y. Aug. 19, 2011) (explaining the 'pending proceeding' rule).

On June 28, 2011, following this Court's May 24, 2011 Decision after Trial granting the relief sought by Desiderio in the adversary proceeding and denying the Debtor's discharge, Desiderio renewed his request for a judgment memorializing the sanctions of $100 per day against the Debtor and Meena pursuant to Judge Eisenberg's November 4, 2008 Order.  [AP Dkt #191].  In the motion, Desiderio requested that this Court enter judgment against the Debtor and Meena in the total amount of $11,300 representing sanctions of $100 per day from November 4, 2008 through February 26, 2009 (the date the Debtor and Meena appeared for Rule 2004 depositions).  This Court denied the motion, without reasons, by Order, dated March 13, 2012, frustrated by Desiderio's seemingly insatiable appetite for sanctions and contempt even after he successfully prosecuted litigation against the Debtor.  Desiderio appealed.

Upon remand by the District Court and a directive to provide reasoning to support denial of the request, this Court directed Desiderio's counsel to file, and settle on the Debtor and his counsel, a proposed judgment, along with a detailed accounting of the proposed judgment amount. [AP Dkt #211].  Desiderio submitted a proposed  judgment seeking monetary sanctions of $93,100.00 against the Debtor and Meena, jointly and severally, based on a calculation of $100 a day from November 4, 2008  to May 24, 2011, the date on which this Court denied the

48

Debtor's discharge.  [AP Dkt #211].  Desiderio contends that the Debtor and Meena did not appear for their Rule 2004 examination until February 26, 2009, and that they never completed their responses to the document requests.  Desiderio argues that the sanctions should continue to run until the Debtor  and Meena produce the requested documents, but concedes that it is appropriate to terminate sanctions as of the date the discharge was denied.  Desiderio also requests interest on the judgment from May 24, 2011.  The $93,100 monetary judgment sought by Desiderio far exceeds the amount originally sought in the motion.

The Debtor and Meena objected to the proposed judgment. [AP Dkt #212].  First, they point out that they appeared on February 26, 2009 for their Rule 2004 Examinations, and Desiderio does not seem to dispute this fact.  Second, as to document production they argue that they were in "substantial compliance" with the Rule 2004 discovery request when they produced documents to Desiderio on September 29, 2008.  Finally, the Debtor and Meena argue that any alleged lack of response "did not prevent Desiderio from successfully prosecuting the adversary proceeding and obtaining a judgment denying Sunil's discharge" [Doc. #212, ¶5], and therefore, the imposition of sanctions is not warranted.

As recognized by Judge Seybert on appeal, this Court has discretion in deciding whether and in what amount to award a monetary judgment to Desiderio based on Judge Eisenberg's November 4, 2008 Order.  The imposition of civil contempt sanctions similar to the one imposed in the November 4, 2008 Order may serve the dual purposes of compelling future compliance with court orders, and compensating the aggrieved party.  *Paramedica Electromedicina Comercial Ltda. v. GE Med Sys. Info Tech, Inc.*, 369 F.3d 645, 657 (2d Cir. 2004) (citing *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*,, 885 F.2d 1,5 (2d Cir. 1989)); accord *Chere Amie, Inc. v. Windstar Apparel Corp.*, 175 F.Supp.2d 562, 566 (S.D.N.Y. 2001) ( "The purpose

of civil contempt sanctions is coercive and compensatory rather than punitive.") (citing *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995)).

Any monetary award under the Order should consider the purpose of the sanction and should be narrowly tailored to achieve that purpose. The purpose of compensating the aggrieved party, in this instance, was achieved. In the November 4, 2008 Order, Judge Eisenberg sanctioned the Debtor, Meena and WGP, jointly and severally, $6,758.10 which represents Desiderio's attorney's fees and costs incurred relative to the proceedings at that time. Pursuant to separate Order, dated November 4, 2008, Judge Eisenberg awarded an additional $2,470 in attorney fees to Desiderio. According to Pergament, a total of $9,228.10 has been paid to Desiderio under the November 4, 2008 orders. In addition to these awards, Desiderio claims to be entitled to $128,635.83 in pre-petition state court legal fees that were, according to the proof of claim filed in this case, awarded to Desiderio but not yet reduced to judgment when the bankruptcy was filed. Upon closing of this case, Desiderio is free to pursue collection of those amounts, in addition to any further legal fees expenses to which he believes he is entitled.

As for the coercive element to civil contempt sanctions, this Court finds that little to no purpose would be served in entering a monetary judgment against the Debtor and Meena at this stage in the proceedings. First, although the Debtor admits that he and Meena did not appear for Rule 2004 depositions until February 26, 2009 – nearly four months after the November 4th Order – the Court cannot find that such delay was entirely attributable to the Debtor and Meena. Desiderio has not directed this Court to any specific date after November 4, 2008, that his counsel was ready to in fact proceed with a deposition at which the Debtor and Meena failed to appear. The record reflects that Pergament did, in fact, suggest Rule 2004 deposition dates in early November 2008 which apparently did not come to fruition. Then in January 2009

Pergament suggested February 17 and 19, 2009.  Apparently Desiderio's counsel was not available those days and the agreed date was moved to February 26, 2009, at which time the depositions proceeded.  Entry of a judgment enforcing a $100 per day sanction is a severe penalty.  This Court cannot find that the delay in appearing for the Rule 2004 deposition was solely attributable to the Debtor and Meena and as a result will not enter judgment for same.

Finally, to the extent Desiderio requested Rule 2004 document discovery to investigate the Debtor's "right to a discharge" in this case, he has succeeded.  Fed. R. Bankr. P. 2004(a).  To the extent Desiderio pursued Rule 2004 discovery in relation to "any matter which may affect the administration of the debtor's estate," that purpose also has been served.  On December 9, 2011, the chapter 7 trustee filed a "report of no distribution" indicating that he "made a diligent inquiry into the financial affairs of the debtor[] and the location of property belonging to the estate; and that there is no property available for distribution from the estate."  This bankruptcy case is, except for this motion, ready to be closed without a discharge.  If Desiderio wants to continue to seek information related to the Debtor's assets in efforts to collect on his various judgments, he can do so outside the jurisdiction of this Court.  For these reasons, the Court declines to enter monetary judgment awarding daily civil contempt sanctions payable to Desiderio for the Debtor and Meena's alleged failure to comply with Rule 2004 subpoenas.

## II.    Motion to relieve Pergament and WGP as Debtor's Counsel in the Adversary Proceeding

On August 19, 2011, Weinberg, Gross & Pergament LLP ("WGP") moved to be relieved as counsel for the Debtor-Defendant in the adversary proceeding. [Doc #197].[14]  The Court has

---

[14]  In the motion, WGP does not seek to be relieved as the Debtor's counsel in the main bankruptcy case.  Nor does it seek to be relieved as counsel to Meena.

received no opposition to this motion.  In support of the motion, Pergament filed an Affirmation stating that he has been unable to contact Sunil Parikh for at least sixty days and believes he may have left for India.  Absent opposition from any party, the Court will enter an order granting this motion.

## CONCLUSION

For the foregoing reasons, the Court grants Desiderio's Motion for Sanctions against Pergament pursuant to Rule 9011(b)(3) but declines to impose any monetary relief for such violation.  The Court denies the remainder of the relief sought against Pergament, the Debtor and Meena.  Further, the Court declines to enter any monetary award in connection with Judge Eisenberg's November 4, 2008 Order.  Finally, the Court grants Pergament and WGP's motion to be relieved as counsel to the Debtor in the above-captioned adversary proceeding.

Orders consistent with this Decision will issue forthwith.

Dated: Central Islip, New York
　　　　April 17, 2014

　　　　　　　　　　　　　　　　/s/ *Robert E. Grossman*
　　　　　　　　　　　　　　　　Hon. Robert E. Grossman, U.S.B.J.